**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ADEL MIKHAEIL, | : | |
| Plaintiff, | : | Civil Action No. 18-8313 (MAS) (TJB) |
| v. | : | **MEMORANDUM OPINION** |
| NEW JERSEY ADMINISTRATIVE OFFICE OF THE COURTS, et al., | : | |
| Defendants. | : | |

**SHIPP, District Judge**

*Pro se* Plaintiff Adel Mikhaeil ("Plaintiff") has filed an Amended Complaint pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 23.) The Court will now review the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(b) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.[1] For the reasons stated below, the Court dismisses the Complaint without prejudice for failure to state a claim upon which relief may be granted.

---

[1] While it appears, based on the mailing address Plaintiff has provided to the Court, that he is no longer incarcerated, the Court may still screen the Complaint. *See Hare v. Plousis*, No. 14-1343, 2015 WL 6739105, at *2 n.1 (D.N.J. Nov. 2, 2015) (explaining that a plaintiff is considered a prisoner for purposes of the Prisoner Litigation Reform Act—which encompasses 28 U.S.C. § 1915A—"if he was a prisoner confined in a correctional facility on the date the complaint was *filed*" (emphasis added) (citing *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002))). It appears that Plaintiff was a prisoner confined at Northern State Prison when he filed the original Complaint. (*See* Notice of Removal, Ex. A, ECF No. 1-1, at 1–6.)

**I.      BACKGROUND**

Plaintiff filed his original Complaint (the "Complaint") on March 15, 2017, in the New Jersey Superior Court, Mercer County, alleging that the New Jersey Administrative Office of the Courts (the "AOC") violated his due process rights by denying him entry into New Jersey's Intensive Supervision Program ("ISP"). (Notice of Removal, Ex. A.) On April 25, 2018, the matter was removed to Federal Court. (Notice of Removal, ECF No. 1.)

The AOC moved to dismiss the Complaint, arguing immunity, lack of subject matter jurisdiction, that it was barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), and that the Complaint failed to state a claim upon which relief may be granted. (Br. in Supp. of Mot. to Dismiss, ECF No. 11-2.) This Court granted the AOC's motion and dismissed the Complaint without prejudice, finding that Plaintiff failed to state a claim for violation of his due process rights. (Op., Mar. 28, 2019, ECF No. 21.) Specifically, the Court determined that Plaintiff does not have a constitutionally protected liberty interest in placement in New Jersey's ISP program. (*Id.* at 7.) The Court additionally construed the Complaint to assert a claim for violation of Plaintiff's equal protection rights under the Fourteenth Amendment. (*Id.* at 8.) The Court dismissed without prejudice the equal protection claim under 28 U.S.C. § 1915A for failure to state a claim because the decision denying Plaintiff's entry into ISP provided "a plausible explanation for the difference in treatment between Plaintiff and his co-defendant." (*Id.* at 8–9.)

Plaintiff subsequently filed the Amended Complaint against the AOC; Ralph A. Esposito, Chief of the ISP Screening Board; the ISP Screening Board; Glenn A. Grant, J.A.D.; Jennifer M. Perez, Director of Trial Court Services; the Gateway Foundation; New Jersey Department of Corrections; Kintock Halfway House; and John Doe. (Am. Compl.) In the Amended Complaint,

Plaintiff brings a single claim against all defendants for violation of his right to equal protection under the Fourteenth Amendment. (*Id.*)

Plaintiff alleges that on January 7, 2015, he agreed to plead guilty to a charges of second-degree conspiracy and official misconduct with a five-year term of imprisonment, provided that he was "permitted to enter the [ISP Program] after serving six month[s]." (*Id.* ¶ 1.) In accordance with the plea agreement, Plaintiff applied for ISP after serving six months of his term of imprisonment. (*Id* ¶ 2.) Thereafter, in June 2015, Plaintiff was interviewed by an ISP officer at South Woods State Prison, where he was incarcerated at the time. (*Id.*) In August 2015, he met with two members of the ISP Screening Board for a "five min[ute] meeting." (*Id.*) Plaintiff claims that the two members of the Screening Board with whom he met advised him that they did not believe he "did enough time in prison" to be eligible for ISP and recommended that he reapply after eighteen months. (*Id.*) On August 18, 2015, Plaintiff was informed that he was deemed ineligible for ISP. (*Id.* ¶ 3) The following reasons were provided for his ineligibility: (1) admission into ISP would depreciate the seriousness of the offense committed by Plaintiff; (2) Plaintiff's needs "exceed the scope and resources of the program"; and (3) Plaintiff displayed an "absence of sincerity and motivation needed to carry out [the program's] obligations." (*Id.*) Plaintiff was also informed that "there shall be no administrative or judicial review at the several levels of Eligibility established under the program, nor any appellate review of the board['s] substantive decision." (*Id.*) Plaintiff reapplied for ISP and his second application was denied on or about October 4, 2016, without an interview, for the same reasons as his first application. (*Id.* ¶ 4.)

Plaintiff alleges that his denial into ISP was "intentional racial profiling" in violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶ 5.) Plaintiff states that his

3

co-defendant received the "exact same plea agreement" and was accepted into ISP after serving six months of his prison sentence. (*Id.* ¶ 2.) Plaintiff alleges that the only differences between him and his codefendant are that he is Egyptian and worked as a bounty hunter whereas his codefendant is white and was a detective captain with the Hudson County Sherriff's Office. (*Id.* ¶ 5.)

Plaintiff further disputes the ISP Screening Board's findings regarding his needs and sincerity and motivation to comply with the obligations of ISP. Plaintiff alleges that two psychiatric evaluations refute the Screening Board's findings. First, Plaintiff claims that in September 2015 he underwent a psychiatric evaluation in which "Doctor Jacobs" stated that he "is fully functional mentally and in good mental heath and motivated to obtain full Minimum status and reside in min[imum] camp[.]" (*Id.*) Plaintiff also alleges that in January 2016 he was examined by Dr. Dana Gabriel who stated that he was psychologically stable and an appropriate candidate for "community release." (*Id.* ¶ 6.) It appears that sometime after the second denial, Plaintiff was transferred to a minimum-security camp at Northern State Prison and approved for community release to a halfway house. (*Id.*) Plaintiff alleges that the denial of his second ISP application was made without consideration of this change in his security status. (*Id.*)

Plaintiff seeks declaratory relief against Defendants, specifically an order stating that the ISP Screening Board violated his constitutional rights and that the decision denying his entry into ISP "was based on racial profiling and discrimination." (*Id.* ¶¶ 13–14.)

## II. STANDARD OF REVIEW

Under the Prison Litigation Reform Act ("PLRA"), district courts are required to review civil actions in which "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). When reviewing such actions, the PLRA

instructs courts to dismiss cases that are at any times frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune. § 1915A(b)(1)–(2). "[T]he legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on [Federal Rule of Civil Procedure Rule] 12(b)(6) motions." *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

Because Plaintiff seeks redress from a government agency, the applicable provisions of the PLRA apply to the screening of his Amended Complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555.) In order to survive a dismissal for failure to state a claim, a complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A plaintiff must be able to demonstrate that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. at 676. Furthermore, while *pro se* pleadings are liberally construed, *pro se* litigants "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III.     ANALYSIS

The Court considers Plaintiff's claims brought pursuant to 42 U.S.C. § 1983. To recover under this provision, two elements must be shown. First, a plaintiff "must establish that the defendant acted under color of state law," and second, that the plaintiff has been deprived of "a right secured by the Constitution." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

In order to state a claim for violation of the Equal Protection Clause, a plaintiff "must allege that he was treated differently from other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected group." *Watlington ex rel. FCI Schuylkill African Amer. Inmates v. Reigel*, 723 F. App'x 137, 139 (3d Cir. 2018) (citing *Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992)); *see also Connors v. No. State Prison*, 2009 WL 1562240 (D.N.J. May 28, 2009) ("[I]n an equal protection claim based upon purported selective treatment, the plaintiff must show that [(1)] he, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motived by an intent to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure.").

The decision of whether a prisoner is eligible for entry into ISP is made entirely in the sound discretion of the assigned three-judge panel. *Smart v. Admin. Office of the Courts*, No. 14-4303, 2016 WL 632230, at *4 (D.N.J. Feb. 17, 2016) (quoting N.J. Ct. R. 3:21-10(e)), *aff'd*, 672 F. App'x 182 (3d Cir. 2017). In the context of discretionary decisions regarding parole and security classifications, like the decision to admit a prisoner into ISP, courts in the Third Circuit have questioned whether "prisoners can be found to be similarly situated to one another for equal

protection purposes, under any circumstances." *Faruq v. McCollum*, No. 11-5987, 2013 WL 3283942, at \*6 (D.N.J. June 25, 2013); *see also Johnson v. Paparozzi*, 219 F. Supp. 2d 635, 644 (D.N.J. 2002); *Rowe v. Cuyler*, 534 F. Supp. 297, 301 (E.D. Pa.), *aff'd*, 696 F.2d 985 (3d Cir. 1982) (Table).[2] That is because "no two prisoners, being different human beings, will possess identical backgrounds and characters." *Rowe*, 534 F. Supp. at 301. Therefore, "it is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics." *Id.* Indeed, the decision to place a prisoner in a pre-release program, like ISP, "is inherently a subjective determination not susceptible of mathematically precise analysis. The grounds articulated for denial may only be highlights of a catalogue of valid objections, any one of which might support the decision." *Id.*

Based on the information provided by Plaintiff regarding his ISP denials, it appears that the ISP Screening Board considers a number of discretionary factors in determining whether a

---

[2] The Supreme Court has commented on the difficulty of applying the Equal Protection Clause to decisions "which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments," albeit not in the context of a prisoner civil rights claim. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008). In *Engquist*, the Supreme Court explained that in cases involving discretionary decisionmaking,

> the rule that people should be 'treated alike, under circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* Only where plaintiffs can demonstrate that they were singled out on the basis of race or sex will be the Equal Protection Clause be implicated. *Id.*

7

prisoner is eligible for the program, including the needs of the applicant and whether the program can appropriately support those needs and the sincerity and motivation of the prisoner to carry out his or her obligations under the program. While Plaintiff alleges that he and his codefendant pleaded guilty to the same charges, he fails to make any allegations to indicate that they were similarly situated with respect to the other factors considered by the ISP Screening Board.[3] Indeed, the statement of reasons denying Plaintiff's entry into ISP provide reasons why Plaintiff was *specifically* ineligible for ISP. Those reasons provide a plausible explanation for the difference in the treatment of Plaintiff and his codefendant.[4]

Nor has Plaintiff sufficiently alleged that the ISP Screening Board's decision was based on race. While Plaintiff alleges that he was treated differently based on the fact that he is Egyptian, whereas his codefendant was white, he makes no allegations that would suggest the ISP Screening Board intentionally discriminated against him on the basis of race. Moreover, Plaintiff's assertions that the ISP Screening Board's decisions were based on "racial profiling" is a legal conclusion that the Court must disregard. *See Mitchell v. Twp. of Pemberton*, No. 09-810, 2010 WL 2540466, at *5 (D.N.J. June 17, 2010) (noting that "'racial profiling' is a legal term art" and that its use in a

---

[3] Plaintiff also alleges in the Amended Complaint that during his time in prison he witnessed other inmates with "violent criminal records" released on ISP because they were white. (Amended Compl. ¶ 12.) However, much like his allegations regarding his codefendant, Plaintiff fails to demonstrate that he and these unnamed inmates were similarly situated.

[4] The psychological evaluations cited by Plaintiff in the Amended Complaint do not call into question the findings of the ISP Screening Board. There is no indication that the ISP Screening Board's findings contradicted these evaluations, which apparently stated that Plaintiff was a good candidate for community release. ISP and the Residential Community Release Program are separate programs that do not appear to have the same eligibility standards and a prisoner's eligibility for one does not necessarily indicate he would be eligible for the other. *Compare* New Jersey Courts, *Intensive Supervision Program Ineligibility List*, https://njcourts.gov/courts/probation/probationinelligible.html (last visited July 31, 2020); *with* N.J.A.C. § 10A:20-4.4 to 4-7 (setting forth eligibility criteria for Residential Community Programs).

complaint "is not an allegation of fact"). Accordingly, because Plaintiff has failed to demonstrate that he and his codefendant were similarly situated or allege that the ISP Screening Board's decision was racially motivated, the Complaint is dismissed without prejudice for failure to state a claim for relief.

### IV. CONCLUSION

For the foregoing reasons, the Complaint is dismissed without prejudice. The Court will afford Plaintiff the opportunity to file a second amended complaint. An appropriate Order follows.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**